# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-0258V

|  |  |
|---|---|
| MICHAEL ERHART, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: May 5, 2026 |
| Respondent. | |

*Jonathan J. Svitak, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.*

*Meghan Murphy, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On February 22, 2023, Micheal Erhart filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine received on October 21, 2021, he suffered a left shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I determine that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner has carried his burden of proof in establishing that he suffered a Table SIRVA injury, and therefore is entitled to compensation.

## I.    Relevant Procedural History

This claim was initiated on February 22, 2023. (ECF No. 1). Petitioner subsequently filed medical records as well as signed declarations supporting his claim on March 10, 2023, and August 5, 2024. (ECF Nos. 6, 25). On January 19, 2024, Respondent filed his Rule 4(c) Report in which he contested entitlement, along with a motion to dismiss. (ECF No. 15). Petitioner filed additional medical records thereafter and on August 5, 2024, Petitioner filed a Motion for Ruling on the Record. (ECF No. 27). Respondent filed his response brief on September 18, 2024. (ECF No. 29). Petitioner filed a Reply brief on September 25, 2024. (ECF No. 30). The matter is now ripe for disposition.

## II.    Relevant Medical History

### A.  Medical Records

On October 21, 2021, Petitioner received both flu and Covid-19 vaccines. Ex. 2 at 3, 6. The site of the injection of both vaccinations is not noted in the vaccine record. *Id.* Petitioner's pre-vaccination medical history includes degenerative disc disease, plantar fasciitis, and bilateral foot pain, but no history of shoulder pain or injury. Ex. 3 at 7, 64.

On November 2, 2021, 12 days post vaccination, Petitioner messaged his primary care provider ("PCP") via the patient portal, stating that "I have been having a lot of pain in my arm since the covid shot (left arm, I think that was the covid shot, I had two that day, flu shot too, don't remember which in which arm)." Ex. 3 at 77-78. He continued to state he did his own online research and "[c]ovid arm (or what should be more [appropriately] called vaccine arm seems to be the culprit, but its pretty bad…I did try my steroid cream you gave me for about four days…nothing." *Id.* at 78. He reported having difficulty lifting his arm. *Id.* His PCP, Austin Martin, MD, responded, recommending he try Tylenol and a heating pad for some relief. *Id.* at 77.

On January 4, 2022, Petitioner had an appointment at his PCP's office for low back and left upper arm pain "which came about following his flu vaccine." Ex. 9 at 8.[3] He reported that "after about a week his pain started to increase." *Id.* Petitioner described having difficulty with reaching overhead, behind his back, across his body and rated his

---

[3] These records are stamped as "Petitioner's Exhibit 7," but were filed as "Petitioner's Exhibit 9."

pain at a 6/10. *Id.* at 8-9. Physical examination showed reduced range of motion ("ROM"), reduced strength, and a positive Hawkins-Kennedy test. *Id.* at 11. Petitioner was to attend ten physical therapy ("PT") visits. *Id.* at 12.

On January 11, 2022, Petitioner had an initial orthopedic evaluation of his left shoulder at OSFMG Ottawa Ortho. Ex. 4 at 2.[4] Petitioner reported left shoulder pain primarily in the upper arm that started "approximately [three] months ago," near the time he received a flu vaccine. *Id.* at 2. He was evaluated at his PCP and referred to orthopedics after taking meloxicam[5] with "limited improvement." *Id.* Physical examination showed decreased range of motion ("ROM") of the left shoulder, minimally reduced strength, tenderness to palpation of the left deltoid, and positive Hawkin's test. *Id.* at 3. An x-ray performed showed moderate degenerative changes of the acromioclavicular joint and the glenohumeral joint. *Id.* at 52. Petitioner was diagnosed with left shoulder adhesive capsulitis and left upper arm pain, with a note that "focal pain in the deltoid, likely related to flu vaccination. There is no evidence of [rotator cuff] weakness to suggest [a] related tear." *Id.* at 3. The provider also administered a left subacromial steroid injection, prescribed diclofenac and a steroid pack, and recommended Petitioner continue PT. *Id.*

Between January 11 - March 24, 2022, Petitioner attended 16 total PT sessions. Ex. 9 at 16-55.[6] At his eighth PT session on March 8, 2022, it was noted that Petitioner had "gradual process with regards to his [left] shoulder ROM." *Id.* at 27. At his final PT session on March 24, 2022, Petitioner reported his shoulder was "feeling a little better" with some "improvements in his shoulder motion with decreased pain but continues to have pain with reaching overhead." *Id.* at 52. He continued to state he was "pleased with the progress he ha[d] made." *Id.*

Petitioner had no further treatment for his left shoulder pain but continued to attend medical appointments for other ailments. From April 14 - May 17, 2022, Petitioner attended six PT sessions for bilateral foot pain but made no complaints of further left shoulder pain. Ex. 9 at 56-72.

### B. Personal Statements

Petitioner submitted three declarations in support of his claim. In Petitioner's first declaration, he stated that he is a 54 year-old male who lives in Illinois and is self-

---

[4] There is a second copy of this record at Ex. 8 at 10-19.

[5] The medical records do not indicate a prescription for Meloxicam.

[6] These records are stamped as "Petitioner's Exhibit 7" however they are filed as "Petitioner's Exhibit 9."

employed as a guitar teacher. Ex. 1 at 1. He was administered a flu vaccination in his left arm at OSF Health Care-Medical Group in Ottawa, Illinois. *Id.* He continued to state that he "began to experience constant pain in [his] left shoulder of a 2 or 3 with an occasional 4-8 on a 10-point scale." *Id.* He tried to treat himself with a homemade sling, took Tylenol, and tried home stretches. *Id.* at 2. He then stated the events as described in the medical records. *Id.* at 2-5. A supplemental declaration filed on August 5, 2024, Petitioner reiterated the events as described in the original declaration and medical records. Ex. 11. Petitioner continued that to this day he has gained over 70 pounds since is injury as movement is painful, he has difficulty with hygiene, playing the guitar, preparing food and had to cut his long hair as he could not maintain it. *Id.* at 12. The injury has also aggravated his depression as he feels he "feel[s] [he] has lost the ability to reach out to the world and exist." *Id.* at 13.

Additionally, Petitioner submitted a signed declaration from his mother, Catharine Minor. Ex. 12. Ms. Miner stated she spoke with her son almost daily and saw him often as he lived less than an hour away. *Id.* at 2. Ms. Miner claims that Petitioner first told her of the "injury" in a phone call in "late October 2022." *Id.* at 2. Over the next few months Petitioner still had complaints of having shoulder pain. *Id.* Ms. Miner says she "witnessed first hand in September 2022" when he moved in with her. *Id.* To date she claims that it has been too painful for him to "contribute" to the household. *Id.* at 4. He has "anti-social tendencies as well as [an] avoidance of travel" and suffers from depression. *Id.* at 5.

### III.    Parties' Respective Arguments

Respondent argues that Petitioner has failed to meet the severity requirement because the records do not support the contention that he suffered the effects of his SIRVA for at least six months. Response at 6. Petitioner maintains that the record is sufficient to establish preponderant evidence in his favor. Mot. at 13.

### IV.    Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

4

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

5

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V.    Analysis

### I.    Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[7] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[7] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury.  *See* § 11(c)(1)(A)(B)(D)(E).

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA.

### 1. Petitioner has no Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Here, there is no evidence that Petitioner suffered from left shoulder pain before his October 21, 2021, vaccination. Respondent has also not made any argument suggesting he believes that Petitioner had a prior left shoulder condition or injury. Accordingly, Petitioner has met the first QAI requirement.

### 2. Pain Occurs Within the Specified Timeframe (Onset)

A petitioner must show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. §§ 100.3(a)(XIV)(B) & 100.3(c)(10)(ii) (QAI criteria)). Respondent has not argued that Petitioner has failed this requirement, and upon consideration of the record I find that preponderant evidence exists to find that Petitioner's left shoulder pain likely began within 48-hours of receiving a flu vaccine on October 21, 2021.

### 3. Petitioner's Pain and Limited Range of Motion was Limited to his Left Shoulder

The specific language of a SIRVA injury contained in the QAI of the Vaccine Injury Table is that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (QAI criteria)). Once again, Respondent has not offered any argument that Petitioner's pain and reduced range of motion impacted anywhere other than his left shoulder, and there is nothing in

7

the record which would allow me to make such a finding. Accordingly, Petitioner has satisfied the third QAI requirement for entitlement.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Once again, there is insufficient evidence in the record to suggest an alternative cause of Petitioner's left shoulder issues and Respondent does not argue that there is any evidence of another condition or abnormality. There is no serious contention that Petitioner's initial symptoms were brought on by anything other than his vaccination. Accordingly, I find that Petitioner has satisfied the fourth QAI requirement for entitlement.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 21, 2021. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). I have also found that Petitioner's pain and reduced range of motion was limited to his left shoulder. 42 C.F.R. § 100.3(c)(10). Finally, I find that there was no condition or abnormality that would explain Petitioner's symptoms after vaccination. *Id*. Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of his SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffered the residual effects of his or her left shoulder injury for more than six months (or required surgical intervention). *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). To satisfy the six-month requirement, "[a] potential petitioner must do something more than merely submit a petition and an affidavit parroting the words of the

statute." *Faup v. Sec'y of Health & Hum. Servs.,* No. 12-87V, 2015 WL 443802, at *4 (Fed. Cl. Spec. Mstr. Jan. 13, 2015). Rather, a petitioner is required to "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months[.]" *Id.* Although a petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion, the fact that a petitioner has been discharged from medical care before the expiration of the six-month period does not necessarily indicate that there are no remaining or residual effects from his or her alleged injury. *See, e.g.*, *Herren v. Sec'y of Health & Hum. Servs.,* 2014 WL 3889070, at *3 (finding that a petitioner suffered from residual symptoms that due to their mild nature did not require medical care).

It is uncontroverted that Petitioner received a flu vaccine on October 21, 2021. Therefore, to meet the severity requirement he must show that his symptoms persisted through at least April 23, 2022. Respondent notes that Petitioner was discharged from PT on March 22, 2022, just over five months after vaccination, and that he did not complain of left shoulder pain after this despite seeking treatment for other ailments. Response at 6. Thus, Respondent deems severity to be unmet. Respondent also argues that the affidavits submitted by Petitioner are contradictory to what is reported in the medical records, and deserve less weight because they were made in the context of litigation. *Id.*

Even without consideration of the affidavits, preponderant evidence exists to find that Petitioner has established the severity of his injury. Petitioner was discharged from PT on March 24, 2022, and although by the end of the course Petitioner indicated that he experienced no pain at rest, it was noted that at time of discharge he still had some limitations with his left shoulder ROM and mild strength deficits. Ex. 9 at 53-55. The record also notes that Petitioner "will continue to improve with doing his updated home exercises program" and that he will "continue independently with HEP." *Id.* at 55. Petitioner adds that he did perform the exercises prescribed to him by his HEP. Ex. 1 at 4.

Overall, the lack of evidence of continuous treatment past discharge from PT does not prevent a finding that the severity of Petitioner's injury persisted *somewhat* beyond six months of onset. It appears that Petitioner opted for self-care such as his HEP, for the period after discharge, based on the recommendations he received from his physical therapist at the time of his discharge. Indeed, the records clearly state that Petitioner's symptoms, while greatly improved, had not completely abated at the time of discharge, but that Petitioner "no longer requires the skilled intervention of a therapist." Ex. 9 at 55. Thus, the evidence in the record allows me to find that Petitioner's symptoms more likely than not continued to persist for at least one more month, which would satisfy the severity requirement. However, I note that despite a finding of entitlement, the record reflects a mild SIRVA which did not require surgery and was managed well enough through PT and

a HEP that Petitioner did not seek any additional formal treatment, and any damages that may be awarded in this case will take these factors into account.

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. A damages order will be entered following the issuance of this ruling to direct the parties of the next steps in resolving damages.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

10